## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**JARELL D. TERRY**                                                                    **PLAINTIFF**
**ADC #149998**

**V.**                            **NO. 2:22-cv-00086-BSM-ERE**

**GARY KERSTEIN,**[1] ***et al*.**                                                **DEFENDANTS**

### PARTIAL RECOMMENDED DISPOSITION

**I.**   **Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Brian S. Miller. The parties may file objections with the Clerk of Court if they disagree with the findings or conclusion set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If the parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.

**II.**   **Background:**

Plaintiff Jarell D. Terry, an Arkansas Division of Correction ("ADC") inmate,

---

[1] The Clerk is instructed to update the docket sheet to reflect the correct spelling of Defendant Kerstein's name – Gary R. Kerstein.

filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 1*. Mr. Terry alleges that Dr. Gary Kerstein, Nurse Practitioner Tracy Bennett, and Dr. Ruth Thomas were deliberately indifferent to his serious medical needs. He explains that, in April 2018, Dr. Thomas failed to surgically remove a bullet or bone fragment from his right ankle. To treat his resulting ankle pain, unidentified medical personnel provided him a prescription for Keppra.

In August 1, 2021, Dr. Gary Kerstein examined Mr. Terry during a telemedicine visit. During his examination, Mr. Terry stated, "I'm tired of this shit." *Id. at 4*. At that time, Defendant Kerstein did not renew Mr. Terry's Keppra prescription.

Since that time, medical personnel have provided Mr. Terry Naproxen, Tylenol, Ibuprofen, and Meloxicam. Mr. Terry complains that those medications have been ineffective, and he continues to suffer from significant ankle plain, numbness, uncomfortable tingling, and occasional stiffness. Additionally, his current diagnoses include osteoarthritis, osteopenia, osteophytes, edema, and joint space narrowing. He also complains that Dr. Kerstein and APRN Tracy Bennett have denied his requests to renew his Keppra prescription.

In his complaint, Mr. Terry requests both injunctive and monetary relief. Specifically, he asks that the Court order ADC officials to: (1) order medical

personnel to surgically remove the bullet or bone fragment in his right ankle; and (2) renew his Keppra prescription immediately. *Doc. 1 at 5*.

Pending before the Court is Mr. Terry's motion for preliminary injunctive relief. *Doc. 7*. In his motion, Mr. Terry repeats the allegations contained in his complaint and requests the same relief sought in his complaint.

For the reasons explained below, Mr. Terry's motion for preliminary injunctive relief (*Doc. 7*) should be denied.

## III. <u>Discussion</u>:

1. Legal Standard

When deciding whether to grant a temporary restraining order or preliminary injunction, four factors are relevant: (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the harm to the nonmoving party should the injunction issue; and (4) the public interest. *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).[2]

A preliminary injunction "is an extraordinary remedy," and the moving party bears the burden of showing he is entitled to such relief. *Watkins Inc. v. Lewis*, 346

---

[2] The four factors are frequently referred to as "the *Dataphase* factors."

F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). Therefore, the Court must be particularly cautious when resolving requests for injunctive relief from prisoners, especially where, as here, discovery has not been completed and the facts are still undeveloped.[3]

    Mr. Terry's burden is heavy because "granting the [requested] preliminary injunction will give [him] substantially the relief [he] would obtain after a trial on the merits." *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (quoting *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 486 (8th Cir.1993)). The primary function of a preliminary injunction is to preserve the status quo until the merits are determined, and "[r]equiring [Defendants] to take affirmative action . . . before the issue has been decided on the merits goes beyond the purpose of a preliminary injunction." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993).

---

[3] At this time, Mr. Terry has until August 18, 2022, to provide a valid service address for Defendant Thomas. *Doc. 14*. The Court will issue its' Initial Scheduling Order after Defendant Thomas has responded to Mr. Terry's complaint or the Court dismisses Mr. Terry's claims against Defendant Thomas.

2. Facts Regarding Mr. Terry's Medical Deliberate Indifference Claim

Defendants, in opposing Mr. Terry's motion, provide: (1) the declaration of Advanced Practice Registered Nurse (APRN) Tracy L. Bennett; and (2) excerpts from Mr. Terry's medical records. *Doc. 18-1*. The following facts are taken from Mr. Terry's medical records.

On February 13, 2018, Dr. Thomas surgically removed one large bullet fragment and two smaller bullet fragments from Mr. Terry's right ankle. *Doc. 18-1 at 4*.

On May 29, 2018, Dr. Thomas noted that some bullet fragments remained in Mr. Terry's ankle, but she had removed the larger ones near the skin surface. *Id. at 5*. Dr. Thomas concluded that: (1) follow up examinations were not needed; and (2) pain medication was not recommended. *Id*.

It is undisputed that medical providers continually provided Mr. Terry Keppra to treat ankle pain. *Id. at 13*.

On May 28, 2021, APRN Bennett examined Mr. Terry. *Id. at 14*. She concluded that Mr. Terry had a normal exam and assessed him as having subjective pain. *Id*.

On June 4, 2021, APRN Bennett again examined Mr. Terry. *Id*. At that time, she diagnosed Mr. Terry with subjective back pain noting mild scoliosis found on a

routine x-ray. *Id. at 10, 14*. She instructed Mr. Terry to stretch and self massage. She also recommended that Mr. Terry continue taking Keppra for pain. *Id. at 14*.

On August 2, 2021, Dr. Kerstein examined Mr. Terry based on his requests to refill his Keppra prescription. *Id. at 15*. Dr. Kerstein noted that Mr. Terry "ambulates w/o assistance, good and steady gait and easily sit/stands for exam." *Id*. He concluded that: (1) Mr. Terry suffered from subjective back pain; and (2) Keppra was not clinically indicated. *Id*. He did not renew Mr. Terry's Keppra prescription at that time.

During APRN Bennett's most recent evaluation of Mr. Terry, on July 22, 2022, she noted that he: (1) entered the infirmary with a limp in his gait; (2) was able to mount and dismount the weight scale and exam table without assistance or difficulty; (3) had a full range of motion of his right ankle; (4) had no edema, erythema, effusions, laxity, or instability in his right ankle; and (5) had an improved gain when leaving the infirmary. *Id. at 16*. APRN Bennett concluded that there was "no clinical indication for Keppra" and provided Mr. Terry Meloxicam. *Id*. She determined that Mr. Terry suffers from arthritis that can be treated with non-steroidal anti-inflammatory drug pain relievers, such as Ibuprofen, Naproxen, and Meloxicam.

3.  *Dataphase* Factors

    A.    Likelihood of Success on the Merits

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (explaining that deliberate indifference is more than negligence or gross negligence and requires culpability akin to criminal recklessness). Likewise, disagreement with treatment decisions cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018) (reiterating that inmates have no right to a particular or requested course of treatment, and a mere difference over matters of expert medical judgment or the course of treatment do not amount to a constitutional violation); see also *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact).

Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d

7

90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted). Mr. Terry "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson*, 929 F.3d at 576.

Here, assuming that Mr. Terry suffered from an objectively serious medical need, it is unlikely that he will succeed on the merits of his deliberate indifference claim. His medical records show that medical personnel consistently examined him and provided treatment and medication. Although Mr. Terry disagrees with the selected pain medication, a mere disagreement in treatment cannot support a showing of deliberate indifference.

Defendants' alleged conduct falls short of even arguably establishing a constitutional violation. Thus, not only is Mr. Terry unlikely to prevail on his medical deliberate indifference claim, but he arguably has also not established a prima facie case.

### B. Irreparable Harm

In addition, on this record, the Court cannot conclude that Mr. Terry will suffer irreparable harm absent Court intervention. As described above, the record shows that medical personnel consistently provided Mr. Terry treatment and medication. His disagreement with that treatment and preference for different pain

8

medications will not support a finding of irreparable harm. "Possible harm" is not enough to support a preliminary injunction; rather, there must be an actual threat of harm. *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (citing *Dataphase Sys., Inc. v. C.L. Sys.*, 640 F.2d 109, 113 (8th Cir. 1981)).

Without a threat of imminent harm, the Court cannot issue a preliminary injunction. *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 977 (8th Cir. 2005).

Because Mr. Terry has failed to make a showing of either a likelihood of success on the merits or irreparable harm, there is no need to analyze the two remaining *Dataphase* factors.

### IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT Mr. Terry's motion for preliminary injunctive relief (*Doc. 7*) be DENIED.

Dated this 9th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE