IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JARELL D. TERRY                                                                                         PLAINTIFF
ADC #149998

V.                              NO. 2:22-cv-00086-BSM-ERE

GARY KERSTEIN, *et al.*                                                                             DEFENDANTS

## PARTIAL RECOMMENDED DISPOSITION

**I.** **Procedure for Filing Objections:**

This Recommendation has been sent to United States District Judge Brian S. Miller. You may file objections to all or part of this Recommendation. Objections, if filed, should be specific and include any factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If you do not file objections, you risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.

**II.** **Background:**

Plaintiff Jarell D. Terry, an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 1*. Mr. Terry alleges that Dr. Gary Kerstein, Nurse Practitioner Tracy Bennett, and Dr. Ruth Thomas were deliberately indifferent to his serious medical needs in violation of the Eighth

Amendment.[1] He explains that, in April 2018, Dr. Thomas performed surgery to remove a bullet from his right ankle, but he later discovered that the entire bullet was not removed, which caused him pain. In addition to ankle pain, Mr. Terry also has other medical issues, including osteoarthritis. He complains that Defendants Dr. Kerstein and Nurse Bennett have refused to prescribe Keppra to treat Mr. Terry's pain, and the pain medications they have prescribed are ineffective. *Doc. 1 at 4*.

Pending before the Court is Defendants' motion for partial summary judgment, brief in support of their motion, and a statement of undisputed facts. *Docs. 34, 35, 36.* Defendants argue that Mr. Terry failed to fully exhaust his administrative remedies as to some of his claims before filing this lawsuit. Mr. Terry has not responded to Defendants' motion, and the time for doing so has passed. *Doc. 37, 39.*[2] The motion is ripe for review.

For the reasons explained below, the undersigned recommends that the Court grant Defendants' motion for partial summary judgment.

---

[1] The Court previously dismissed Mr. Terry's claims against Dr. Ruth Thomas as time-barred. *Doc. 26*.

[2] At Mr. Terry's request, the Court extended until December 16, 2022 the deadline for him to respond to the summary judgment motion.

2

### III. <u>Discussion</u>:

#### A. **The PLRA Makes Exhaustion Mandatory**

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted prior to filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that administrative exhaustion "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Terry to satisfy the ADC's requirements for raising and exhausting the claims he is asserting in this lawsuit before bringing this action.[3]

---

[3]There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

## B. The ADC's Exhaustion Policy

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 14-16, superseded by Administrative Directive 19-20, and, again, superseded by Administrative Directive 19-34. *Doc. 36-1 at 4-59*. The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Id. at 20, 40, 59*.

To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen calendar days of the incident; (2) a "Step Two" formal unit-level grievance raising that claim with the Health Services Administrator within three business days of the denial of the informal resolution; and (3) an appeal to the Deputy Director of Health within five working days of the Health Services Administrator's decision. *Id. at 9-16, 27-35, 46-54*. The grievance process ends when the Deputy Director of Health issues a written decision or rejects the appeal. *Id. at 16, 34, 53*.

Thus, to properly exhaust his administrative remedies with respect to his claim against Defendants, Mr. Terry was required to present the claim in a timely filed grievance and appeal it through all three steps of the ADC's grievance process. See *Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means

using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

    **C.**    **Mr. Terry's Grievance History**

In support of their motion, Defendants submit the declaration of the ADC's Medical Grievance Supervisor, Brandy Johnson. *Doc. 36-1*. Ms. Johnson states that, during the time period relevant to this lawsuit, Mr. Terry fully exhausted seven medical grievances: (1) EAM-19-2478; (2) EAM-20-1387; (3) EAM-20-1883; (4) EAM-20-2283; (5) EAM-21-196; (6) EAM-21-1700; and (7) EAM-22-499. *Doc. 36-1 at 3*.

It is undisputed that the claims raised by Mr. Terry in grievances EAM-19-2478, EAM-20-1387, EAM-20-1883, EAM-20-2283, and EAM-22-499 are not related to the claims made against Dr. Kerstein or Ms. Bennett in this lawsuit.[4] *Doc.*

---

[4] In grievance EAM-19-2478, Mr. Terry complains about knee pain and excessive weight loss. *Doc. 36-1 at 65*. In grievance EAM-20-1387, Mr. Terry complains that ADC officials told him that he would be forced to take the COVID-19 vaccine. *Id. at 69*. In grievance EAM-20-1883, Mr. Terry complains about the ADC staff's failure to: (1) provide him prescription glasses; (2) treat his "penis problem"; (3) treat his back pain; and (4) provide him various medications. Although Mr. Terry references Ms. Bennett in that grievance, he does not complain that she failed to renew his Keppra medication. *Id. at 72*. In grievance EAM-20-2283, Mr. Terry complains about ankle pain, back pain, and rib cage pain. However, he does not mention either Dr. Kerstein or Ms. Bennett in that grievance. *Id. at 76*. In grievance EAM-22-499, Mr. Terry complains about the ADC staff's failure to provide him a flu vaccine. *Id. at 86*.

*36-1 at 65, 69, 72, 76*. Accordingly, although Mr. Terry fully exhausted those grievances, they are not relevant to his pending claims. However, grievances EAM-21-196 and EAM-21-1700 require additional discussion.

In grievance EAM-21-196, Mr. Terry complains that "medical services" failed to treat his ankle pain and have failed to provide him scripts for "no stair[s], no prolong[ed] standing, [and a] bottom tier." *Id. at 79*. He also complains that ADC staff continue to force him to use the stairs and to stand in the shower.

In response to grievance EAM-21-196, the health services administrator explained that, on January 12, 2021, Ms. Bennett examined Mr. Terry's ankle and knee. She noted that Mr. Terry's x-ray results revealed that his knee was "intact." *Id. at 80*. At that time, Ms. Bennett instructed medical staff to continue to provide Mr. Terry Keppra. *Id*.

Mr. Terry's complaint does not reference his January 12, 2021 encounter with Ms. Bennett. Rather, his claims against her are limited to her *failure* to provide him Keppra following his encounter with Dr. Kerstein in August 2021. *Doc. 1 at 4*. Accordingly, although Mr. Terry fully exhausted the claims raised in EAM-21-196, they are not relevant to the claims asserted in this lawsuit.

In grievance EAM-21-1700, Mr. Terry complains that, on August 2, 2021, Dr. Kerstein discontinued his Keppra prescription. *Id. at 83*. Mr. Terry raises the same claim in this lawsuit. He should be allowed to pursue his medical deliberate

6

indifference claim regarding Dr. Kerstein's August 2nd discontinuance of Mr. Terry's Keppra prescription.

In addition, in responding to grievance EAM-21-1700, the health services administrator noted that, on August 16, 2021, Ms. Bennett examined Mr. Terry for pain management. *Id. at 84*. At that time, Ms. Bennett told Mr. Terry that "there would be no renewal o[f] Keppra per Dr. Kerstein." *Id*. Mr. Terry should also be allowed to proceed on his medical deliberate indifference claim regarding Ms. Bennett's failure to provide him Keppra at his August 16, 2021 encounter.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for partial summary judgment (*Doc. 34*) be GRANTED.

2. Mr. Terry be allowed to proceed on his claims arising from his: (1) August 2, 2021 encounter with Dr. Kerstein during which he discontinued Mr. Terry's Keppra prescription; and (2) August 16, 2021 encounter with Ms. Bennett during which she failed to renew Mr. Terry's Keppra prescription.[5]

3. All remaining claims be dismissed, without prejudice.

---

[5] Defendants concede that Mr. Terry exhausted these two allegations of deliberate indifference.

Dated this 23rd day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE